UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

HOXQUELIN GOMEZ HEREDIA,

                        Petitioner,

      -against-

CHRISTOPHER SHANAHAN, in his official
capacity as New York Field Office Director for
U.S. Immigration and Customs Enforcement;
DIANE MCCONNELL, in her official capacity
as Assistant Field Office Director of U.S.
Immigration and Customs Enforcement; JOHN F.
KELLY, in his official capacity as Secretary of
the U.S. Department of Homeland Security; JEFF
SESSIONS, in his official capacity as Attorney
General of the United States; and the U.S.
DEPARTMENT OF HOMELAND SECURITY,

                        Respondents.[1]

---

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/28/17

16 Civ. 2024 (KMW)

**OPINION & ORDER**

KIMBA M. WOOD, District Judge:

       Petitioner Hoxquelin Gomez Heredia has spent the better part of two years in the custody

of the Department of Homeland Security ("DHS"), and applies under 28 U.S.C. § 2241 for a writ

of habeas corpus releasing him pending the outcome of his removal proceedings. In the

alternative, Heredia seeks a bail hearing before an immigration judge. For the reasons stated

herein, Heredia's petition is GRANTED, and DHS is ordered to give him a bail hearing within

two weeks.

## I.    BACKGROUND

       Heredia is a citizen of the Dominican Republic. Am. Pet. ¶ 15, ECF No. 4. He first

entered the United States in August 1997 as a legal permanent resident ("LPR"). _Id._ In 1999,

Heredia was arrested and pled guilty to criminal possession of marijuana in the fifth degree, in

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the proper respondents in this matter are now John F. Kelly, the
current Secretary of Homeland Security, and Jeff Sessions, the current Attorney General.

violation of New York Penal Law ("NYPL") § 221.10. *Id.* ¶ 33. In 2008, Heredia was arrested for selling cocaine to an undercover police officer and, in 2010, he pled guilty to violating NYPL § 220.16(1), criminal possession of a controlled substance in the third degree by possessing a narcotic drug with the intent to sell. *Id.* ¶ 34. In 2015, Heredia sought to vacate the conviction, which was granted in 2016; subsequently, he agreed to instead plead guilty to violation NYPL § 220.16(12), criminal possession of a controlled substance in the third degree by possessing a mixture containing an aggregate weight of half an ounce or more of a narcotic drug. Pet'r Reply 4, ECF No. 17-1; *see id.* Ex. G. Section 220.16(12) is a possession offense and is not an "aggravated felony" within the scope of 8 U.S.C. § 1101(a)(43).

On June 11, 2015, Heredia left the United States with his family for a vacation to the Dominican Republic. Am. Pet. ¶ 37. Upon his return through John F. Kennedy International Airport on June 21, 2015, he was taken into custody. *Id.* ¶ 38. An immigration judge issued a removal order on January 12, 2016. *Id.* ¶ 40 & Ex. N. Heredia filed a timely appeal of the immigration judge's decision to the Board of Immigration Appeals ("BIA"), *id.* ¶ 41 & Ex. O, and the BIA affirmed the order of removal on May 6, 2016, Pet'r Reply 4 & Ex. F. Heredia then timely filed for review of the BIA's decision with the Second Circuit Court of Appeals. *Id.* at 4; *see also Gomez-Heredia v. Sessions*, No. 16-1465 (2d Cir.). Heredia filed a motion to stay removal with the Second Circuit, which the Government opposed; the motion remains pending. *Gomez-Heredia*, No. 16-1465, ECF Nos. 6, 12. Under the Government's forbearance policy, the U.S. Department of Immigration and Customs Enforcement ("ICE") will not remove a detainee while judicial proceedings are pending. *See, e.g.*, *Efstathiadis v. Holder*, 752 F.3d 591, 599 n.5 (2d Cir. 2014).

## II.     DISCUSSION

The Court first addresses two key legal issues—the statutory framework and constitutional due process—before applying the law to Heredia's petition.

a.  Statutory Framework

The parties dispute which provisions of Title 8 of the United States Code govern Heredia's detention.  The three relevant sections are §§ 1225(b)(2)(A), 1226(c), and 1231.

Section 1225(b)(2)(A) authorizes the detention of arriving aliens.  It provides that an alien who is an "applicant for admission . . . shall be detained for a removal proceeding" if the examining immigration officer determines that the alien "is not clearly and beyond a doubt entitled to be admitted."

Section 1226(c) authorizes the detention of aliens who have committed criminal offenses, specifically any alien who has committed certain criminal offenses, defined by 8 U.S.C. § 1182(a)(2), and which includes "a violation of . . . any law . . . relating to a controlled substance," 8 U.S.C. § 1182(a)(2)(A)(i)(II).  This section applies while the Government is seeking a final removal order.  *See Wang v. Ashcroft*, 320 F.3d 130, 146 (2d Cir. 2003).

Generally, LPRs re-entering the United States, such as Heredia, are not considered arriving aliens, and thus would be governed by § 1226, rather than § 1225.  8 U.S.C. § 1101(a)(13)(C); *see also Arias v. Aviles*, No. 15 Civ. 9249, 2016 WL 3906738, at *2 (S.D.N.Y. July 14, 2016) (Abrams, J.), *appeal filed*, No. 16-3186 (2d Cir. Sept. 12, 2016).  However, LPRs who fit one of six categories—including aliens who have "committed an offense identified in section 1182(a)(2) of this title"—may be treated as an alien seeking admission.  8 U.S.C. § 1101(a)(13)(C)(v).  Thus, despite his status as a LPR, Heredia was initially detained pursuant to § 1225(b)(2).

3

Section 1231 governs the "[d]etention, release, and removal of aliens ordered removed." It directs that, following a removal order, "the Attorney General shall remove the alien from the United States within a period of 90 days," which is referred to as the "removal period." 8 U.S.C. § 1231(a)(1)(A). Pursuant to § 1231, an alien must be detained during the 90-day removal period, *id.* § 1231(a)(2), which begins when the order of removal becomes administratively final, unless the removal order is judicially reviewed and a stay of removal is ordered, or unless the alien is released, *id.* § 1231(a)(1)(B). If the removal period is tolled, § 1231 does not authorize detention and authority for detention reverts to another provision, such as §§ 1225 or 1226. *Argueta Anariba v. Shanahan*, 190 F. Supp. 3d 344, 349 (S.D.N.Y. 2016) (Forrest, J.).

Under the forbearance policy, the Government will not remove an alien while his or her petition is pending with the Second Circuit. *In re Immigration Petitions for Review Pending in U.S. Court of Appeals for Second Circuit*, 702 F.3d 160, 162 (2d Cir. 2012). As a result, the Second Circuit does not, as a rule, rule upon motions for a stay of removal. As the Second Circuit has explained:

> [I]t is wasteful to commit judicial resources to immigration cases when circumstances suggest that, if the Government prevails, it is unlikely to promptly effect the petitioner's removal. This state of affairs undermines the Court's ability to "allocate effectively its limited resources and determine whether adjudication of the petition will be merely an empty exercise tantamount to issuing an advisory opinion." . . .
>
> While a petition is pending in this Court, the Government's forbearance policy has assured that removal will not occur. We will assume that forbearance will continue while the case remains with the agency following our remand and during its return to this Court, if that should occur. In the event that the Court and a petitioner are advised at any time that this assumption is unwarranted, the petitioner may promptly apply for a stay of removal.

*Id.* at 160-62 (footnote omitted) (quoting *Ping Li v. Holder*, No. 08-2917 (2d Cir. Sept. 22, 2009)).

4

Because the Second Circuit does not *grant* the stay of removal, as contemplated by 8 U.S.C. § 1231(a)(1)(B)(ii), "[d]istrict courts in this Circuit are divided as to whether the mere filing of a motion for a stay of removal, when combined with the forbearance policy, serves to toll the removal period and thus locate the movant within § 1226 [or § 1225(b)] rather than § 1231." *Argueta Anariba*, 190 F. Supp. 3d at 349 (collecting cases and finding that a motion for a stay of removal tolls the removal period). The Court of Appeals for the Second Circuit "'ha[s] been disproportionately burdened by a surge in immigration appeals and a corresponding surge in the size[] of [its] immigration docket[],' which renders the likelihood that it will act on an all-but-moot motion vanishingly small." *Id.* at 349-50 (alterations in original) (quoting *Lora*, 804 F.3d at 615-16).

At least three judges in this district have concluded that the Government's forbearance policy combined with the Second Circuit's policy on motions to stay removal is the equivalent of a court-ordered stay. *See id.*; *Rone v. Shanahan*, No. 15 Civ. 9063, 2016 WL 1047393, at *8 (S.D.N.Y. Mar. 10, 2016) (Hellerstein, J.) ("I hold that the Attorney General's forbearance policy in effect in the Second Circuit must be treated, for the purposes of Rone's entitlement to be heard on his bond application, as if a Court had issued a stay of removal pending judicial review. Otherwise, the Court of Appeals' policy of silence on stay motions would be the equivalent of a policy of denial."), *vacated on appeal as moot*, No. 16-1541, 2016 WL 7668454 (2d Cir. Nov. 15, 2016); *Shehnaz v. Ashcroft*, No. 04 Civ. 2578, 2004 WL 2378371, at *2 (S.D.N.Y. Oct. 25, 2004) (Cote, J.). The Government points to no cases in this district in which a judge has decided otherwise. *See* Resp't Br. 10 n.4 (collecting out-of-district cases).

Under the circumstances created by the forbearance policy, the Court concludes that moving for a stay of removal tolls the removal period. Under the forbearance policy, the

Government effectuates a stay of removal without need of a court order; the Second Circuit, therefore, declines to grant the stay because its decision would not affect the alien's removal status.  The end result is the one contemplated by 8 U.S.C. § 1231(a)(1)(b)(ii), even if it does so "imperfectly," *Argueta Anariba*, 190 F. Supp. 3d. at 349, as the removal order is being judicially reviewed and the alien's removal is stayed pending resolution.  "The Second Circuit's forbearance may not be a stay, but neither is it a denial of a stay.  In the absence of clarification, the Court of Appeals declination to act should not prejudice the petitioner." *Rone*, 2016 WL 1047393, at *7.

   b.  Due Process

The level of due process enjoyed by an alien depends on the statute under which he or she is detained.  Before evaluating the facts of this case, it is worth briefly examining the relevant Supreme Court and Second Circuit precedent.

In 2001, the Supreme Court addressed the issue of due process as it related to indefinite detention of an alien pursuant to § 1231. *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001).  After the mandatory 90-day removal period under § 1231(a)(1) and (2), the statute authorizes indefinite detention of an alien in a variety of situations, laid out in § 1231(a)(6).  In order to avoid a constitutional violation, the Supreme Court concluded that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id*. at 699.  The Court found that detention is "presumptively reasonable" for a period of six months following the final removal order, and that detention violates § 1231 if "the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," and the Government does not respond "with evidence sufficient to rebut that showing." *Id*. at 701.  The Second Circuit has stated that this test "articulates the outer bounds of the

6

Government's ability to detain aliens (other than those serving criminal sentences) without jeopardizing their due process rights." *Wang*, 320 F.3d at 146.  Two years later, in *Demore v. Kim*, 538 U.S. 510 (2003), the Supreme Court addressed the constitutionality of § 1226(c), and found that "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings," *id.* at 526, but emphasized that the period must be reasonable and for a brief period of time, *id.* at 528.

In 2015, the Second Circuit, relying on *Zadvydas* and *Demore*, held that an alien detained pursuant to § 1226(c) must be afforded a bail hearing before an immigration judge within six months of his or her detention.  *Lora v. Shanahan*, 804 F.3d 601, 616 (2d Cir. 2015), *cert. denied*, No. 15-1307, 136 S. Ct. 2494 (June 20, 2016).  The Second Circuit relied upon the Supreme Court's holding in *Zadvydas* that "'[t]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence here is lawful, unlawful, temporary or permanent,'" and noted that the Court "signaled its concerns about the constitutionality of a statutory scheme that ostensibly authorized indefinite detention of non-citizens." *Lora*, 804 F.3d at 613 (quoting *Zadvydas*, 533 U.S. at 693).  In order to avoid serious constitutional concerns, the Second Circuit read § 1226(c) to include "an implicit temporal limitation," *id.* at 614, and concluded that "*Zadvydas* and *Demore*, taken together, suggest that the preferred approach for avoiding due process concerns in this area is to establish a presumptively reasonable six-month period of detention," *id.* at 615.  The Second Circuit concluded that "an immigrant detained pursuant to section 1226(c) must be afforded a bail hearing before an immigration judge within six months of his or her detention" and "that the detainee must be admitted to bail unless the government establishes by clear and convincing

7

evidence that the immigrant poses a risk of flight or a risk of danger to the community." *Id.* at 616.

Neither the Second Circuit nor the Supreme Court has addressed whether a LPR detained under § 1225(b) must be given a bail hearing within six months. In December 2016, the Supreme Court asked for supplemental briefs in *Jennings v. Rodriguez* on this very question. 137 S. Ct. 471, 472 (2016) (Mem.). In light of the lengthy time Heredia has been in detention, this Court will decide the habeas petition now.

In the absence of controlling precedent, courts in this district have split on this issue. *Compare Ricketts v. Simonse*, No. 16 Civ. 6662, 2016 WL 7335675, at *4 (S.D.N.Y. Dec. 16, 2016) (Schofield, J.) (holding that, "post-*Lora*, detention pursuant to § 1225(b) must be construed to contain a reasonableness limitation of six months"), *and Arias*, 2016 WL 3906738, at *4 (finding that § 1225(b) "must be construed to avoid due process concerns" and "that a six-month limit as outlined in *Lora* is the appropriate limiting principle in this circuit"), *with Perez v. Aviles*, 188 F. Supp. 3d 328, 332 (S.D.N.Y. 2016) (Keenan, J.) (holding that detention under § 1225(b) is not "implicitly time limited or requires a bond hearing"), *and Cardona v. Nalls-Castillo*, 177 F. Supp. 3d 815, 816 (S.D.N.Y. 2016) (Scheindlin, J.) (declining to extend *Lora* to § 1225(b)).

The Court is persuaded by the reasoning of *Ricketts* and *Arias*: the Court can find no basis to distinguish a LPR detained before a removal hearing pursuant to § 1226(c) who is entitled to a bail hearing within six months, *Lora*, 804 F.3d at 616, and a LPR detained pursuant to § 1225(b). As the Honorable Ronnie Abrams concluded in her detailed and well-reasoned opinion, to find that § 1225(b) does not contain a six-month reasonableness limitation "could yield undesirable results post-*Lora*. . . . [S]uch a decision could result in affording more

protections to non-resident aliens detained under § 1226(c), and for whom removal is authorized by law, than to LPRs detained pursuant to § 1225(b) and merely accused of wrongdoing." *Arias*, 2016 WL 3906738, at \*9.

In opposition, the Government cites *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953), arguing that certain LPRs re-entering the United States are entitled to a lower level of constitutional protection. Resp't Br. 19-20, ECF No. 14. In that decision, the Supreme Court held that Mezei, a resident alien, lost due process protections in part due to a twenty-month absence from the United States. As this Court has held, *Mezei* should be narrowly construed: "The not-so-veiled subtext of *Mezei*'s majority opinion . . . was that Mezei had lost his entitlement to due process rights, not just because he had spent time abroad, but also because he had abandoned his residence in—and possibly also his loyalty to—the United States by returning to Eastern Europe for over a year." *St. John v. McElroy*, No. 95 Civ. 9810, 1995 WL 753936, at \*2 (S.D.N.Y. Dec. 19, 1995) (Wood, J.); *see also Arias*, 2016 WL 3906738, at \*7 (discussing *St. John* and collecting cases). The other two Supreme Court cases that address due process considerations for LPRs—*Kwong Hai Chew v. Colding*, 344 U.S. 590 (1953), and *Landon v. Plasencia*, 459 U.S. 21 (1982)—make clear that while "an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application . . . once an alien gains admission to our country, and begins to develop the ties that go with permanent residence his constitutional status changes accordingly." *St. John*, 1995 WL 753936, at \*3 (quoting *Plasencia*, 459 U.S. at 32).

Accordingly, the fact that a LPR is detained pursuant to § 1225(b) rather than § 1226 does not change the constitutional due process he or she is owed.

9

c.  Application

Heredia's detention began June 21, 2015.  He was detained pursuant to § 1225(b)(2) until May 6, 2016, when his removal order was administratively final.  This detention was over ten months, and Heredia was entitled to a bail hearing pursuant to *Lora*.  However, once Heredia became subject to a final order of removal, his claims for relief regarding his pre-final order detention became moot.  *Xue v. Holder*, 354 F. App'x 596, 597 (2d Cir. 2009).  Heredia was detained pursuant to § 1231 from May 6 until May 9, when his motion for a stay of removal was filed.  He has been detained, pursuant to § 1225(b)(2),[2] since May 9, 2016—now, for almost eleven months—without a bond hearing.  His continued detention without a hearing is no longer reasonable, and Heredia must be afforded a hearing.

### III.   CONCLUSION

For the reasons discussed above, the petition for habeas corpus is GRANTED.  ICE shall provide Heredia with a *Lora* bail hearing before an immigration judge no later than **April 11, 2017**.

SO ORDERED.

Dated:  March 28, 2017
New York, New York

KIMBA M. WOOD
United States District Judge

---

[2] The Court assumes, without deciding, that Heredia would be detained pursuant to § 1225(b), rather than § 1226(c).  Because the Court concludes that *Lora*'s due process analysis applies with equal force to both statutory provisions, the difference is immaterial.